J-A24041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KENNETH FAISON | : | |
| | : | |
| Appellant | : | No. 1918 EDA 2018 |

Appeal from the Judgment of Sentence Entered May 25, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0001675-2016

BEFORE:   BENDER, P.J.E., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED NOVEMBER 19, 2019**

Appellant, Kenneth Faison, appeals from the aggregate judgment of

sentence of 25 to 50 years of confinement, which was imposed after his jury

trial convictions for robbery, possession of weapon, and theft by unlawful

taking and his bench trial conviction for persons not to possess firearms.[1]

We affirm.

The facts underlying this appeal are as follows:

[On December 9, 2015, at] around 8:30 p.m., two store
employees were working at the Circle K convenience store when
an individual walked into the store, gestured one of the employees
behind the counter, pulled out a gun and demanded money.
These events were captured on videotape from the store
surveillance cameras.  (**See generally** N.T.-Jury Trial 12/13/16.)

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3701(a)(1)(ii), 907(b), 3921(a), and 6105(a)(1), respectively.

> The video depicted the robber putting his hand on the counter and taking money. (*Id.*) The Commonwealth presented evidence that the fingerprints removed from the counter, matching the robber, matched with Appellant on an automated fingerprint identification system (AFIS). (*Id.*) Moreover, after Appellant was taken into custody, the police searched his vehicle. The police discovered articles of clothing consistent with that worn by the robber; a scarf and a black short-sleeved, zip-up shirt. (*Id.* at 250-297.)

Trial Court Opinion ("Trial Ct. Op."), filed February 6, 2019, at 1-2. Appellant was arrested in March 2016. *Id.* at 13.

> On June 15, 2016, [Nicholas] Reifsnyder was appointed as defense counsel, discovery was provided and the matter was continued until July 14, 2016. On July 14, 2016, the matter was relisted yet again for August 12, 2016. Thereafter, the defense requested a continuance to review further discovery. Then, on September 16, 2016, two months before trial, the defense informed the trial court that discovery was complete and the underlying matter was put on the call of the trial list.

*Id.* As part of that discovery, "Appellant was provided with the still photographs from the video surveillance and shown the video prior to trial. The fingerprint evidence was provided in the affidavit of probable cause." *Id.* at 14 (citation to the record omitted).

On September 19, 2016, following a pre-trial conference, an order was entered at Appellant's request scheduling his trial for October 19, 2016. Pretrial Conference Order, 9/19/2016. On October 19, 2016, at Appellant's request, the trial was continued until December 12, 2016. Call of the Trial List Order, 10/19/2016.

A pretrial conference was held on December 7, 2016, during which the Commonwealth provided Appellant with a copy of the fingerprint expert's curriculum vitae and slides that the expert planned to use during his

testimony.  N.T., 12/7/2016, at 13-14.  The Commonwealth added that "in [an] abundance of caution," it was also providing Appellant with a copy of the expert's report, although the Commonwealth "believe[d]" that the report had already been given to Appellant as part of discovery.  *Id.*  Appellant gave no indication that he was receiving this report for the first time.  *See id.*

"With the agreement of counsel, the persons not [to] possess [firearms] charge was bifurcated" – *i.e.*, the trial court would conduct a bench trial on said count after the completion of the jury trial on the other three counts. Trial Ct. Op., filed February 6, 2019, at 2.  "The charge was severed from the case due to potential jury prejudice associated with disclosure of Appellant's prior record."  *Id.* at 9.  Prior to the agreement to bifurcate, the trial court confirmed with Appellant that he knew that he had the right to a jury trial on the persons not to possess firearms charge.  N.T., 12/12/2016, at 17.

"During the jury trial, [Appellant] represented himself *pro se*. Nicholas Reifsnyder, Esq. acted as standby counsel for [Appellant] during the trial."  Trial Ct. Op., filed February 6, 2019, at 2.  Prior to the commencement of the jury trial, the trial court engaged in the following colloquy with Appellant:

> Q    . . . I just want to clarify again at this time, sir, you understand that you are scheduled for a jury trial today?
>
> A    Yes, ma'am.
>
> Q    And that Mr. Reifsnyder is going to be standby counsel, but you are representing yourself in this matter.  Is that what you intend?

A      Yes, ma'am.

Q      Okay.  Sir, do you understand the charges against you?

A      Yes, Your Honor.

Q      . . . You understand that if you waive the right to counsel, you'll still be bound by all the normal rules of procedure that the [c]ourt has?

A      Yes.

Q      Okay.  Counsel is familiar with these rules.  You, as an untrained layperson, may not be.  Do you understand that?

A      Yes.

Q      Sir, you also understand . . . that there may be possible defenses to your charges and that if representing yourself you don't raise them during this trial, you are waiving them, meaning giving them up.  Do you understand that?

A      No.  Can you explain that to me?

Q      Sure.  There may be a myriad of defenses that you have. I don't know what they may be.  Counsel, as a skilled attorney, is familiar with what those defenses may be, whether it's trying to question the fingerprints examiner, the authenticity of the videotape, or a variety of things.  You have the right to raise any defenses that you have in this case; but if you don't raise something during this trial, meaning bring it up, you're giving up that right to bring it up in the future.  You can't say to the next higher court, Oh, I now have an argument I didn't make before the jury.

A      I understand.

Q      Okay.  Additionally, you have the right to object during the trial or to raise issues with the [c]ourt similar to the motions that have been preserved by counsel.  And if there is anything that you don't raise with the [c]ourt appropriately -- so, for example, if the prosecutor raises something and you don't object to it appropriately, you don't get to raise that later.  The only thing that will go up to a higher court are the issues that you preserve here, that you make sure are brought before this [c]ourt and this jury.  Do you understand that?

A      Yes. . . .

- 4 -

Q        Are you taking any medication?

A        No.

Q        Any reason you cannot think clearly today?

A        No.

Q        Did anyone force you or threaten you to proceed without counsel?

A        No.

Q        Sir, do you understand . . . the [c]ourt thinks it is a very bad choice for you to represent yourself when the consequences are so high.  Do you understand that?

A        Yes.

Q        And that the [c]ourt has appointed not only competent counsel, but skilled counsel to represent you in Mr. Reifsnyder. Do you understand that?

A        Yes.

Q        Is it still your intention to represent yourself in this matter?

A        Yes.

N.T., 12/12/2016, at 4-8.  After Appellant made an oral motion for "more time

[to] help [him] better prepare a defense[,]" *id.* at 8, the trial court responded:

Sir, I am being more than fair with you in the respect that this matter has been scheduled for trial since October 19.  It is now almost a full two months later, as it is December 12.  Again, it is the [c]ourt's strong recommendation, as I ordered counsel to be prepared for trial today, that you allow counsel to aid you in this matter.  It is your choice, it is your life, and I cannot and will not force you to use counsel if you don't choose to; but I will not grant a continuance, as this matter has been scheduled since October 19 for trial and, prior to the trial date, this matter was listed five different times before me for different pretrial issues.

*Id.* at 10.  The trial court denied Appellant's request for a continuance.  *Id.*

at 14.

During their deliberations, the jury asked four questions pertinent to the fingerprint report; the trial court decided that the best response would be to provide the jury with a copy of the report but not to answer the questions. N.T., 12/13/2016, at 441-42. On December 14, 2016, the jury convicted Appellant of the aforementioned robbery, possession of weapon, and theft counts. Later that same day, the trial court conducted a bench trial and convicted Appellant of persons not to possess firearms.

> Ultimately, on May 25, 2018, Appellant was sentenced to twenty-five (25) to fifty (50) years imprisonment because the Commonwealth invoked a "third strike" mandatory on his robbery conviction. (**See** Disposition, 5/25/18.) On June 4 2018, Appellant, through his attorney, filed his "Post–Sentence Motion for Judgment of Acquittal, Motion for New Trial and Preservation of Issues and Motion for Reconsideration of Sentence". (**See** Post-Trial Motion, 6/14/18.) Subsequently, the trial court denied said motion. (**See** Order, 6/4/18.)
>
> On June 29, 2018, Appellant filed his Notice of Appeal from the trial court's Order. (**See** "Notice of Appeal", 6/29/18.) On July 27, 2018, the trial court directed Appellant to file a Concise Statement of Matters Complained of on Appeal ("Concise Statement") pursuant to Pennsylvania Rule of Appellate Procedure (Pa. R.A.P.), § 1925(b). (**See** Court Order, 7/27/18.)

Trial Ct. Op., filed February 6, 2019, at 2.

Appellant now presents the following issues for our review:

> [I.] Whether the Commonwealth committed a **Brady**[2] violation and the Pennsylvania Rules of discovery by failing to provide a copy of the fingerprint obtained from AFIS that reportedly belonged to [A]ppellant, and utilized by the

---

[2] **Brady v. Maryland**, 373 U.S. 83, 86-89 (1963), held that a prosecution's withholding of information or evidence that is favorable to a criminal defendant's case violates the defendant's due-process rights and that the prosecution has a duty to disclose such information or evidence.

Commonwealth fingerprint examiner to opine that his fingerprint in the AFIS system matched the latent prints obtained from the Circle K convenience store in the matter of CP-46-CR-1675-2016, as this was the critical piece of evidence that led Pottstown Detective Heather Long to file criminal charges against [A]ppellant, approximately two months after the robbery?

[II.] Whether the trial court erred in denying Appellant's Motion for Judgment of Acquittal on the charges of Robbery, Person Not to Possess a Firearm, Possession of Weapon, and Theft in the case docketed at CP-46-CR-1675-2016 because the evidence presented was not sufficient weight and facially sufficient for a finding beyond a reasonable doubt by the jury, in that low quality video surveillance footage taken from inside the store did not show the face of the perpetrator, nor did it depict the perpetrator with a handgun, the fingerprints found near the counter of the store that the examiner opined matched could have been left at any time, and the examiner utilized a fingerprint of [A]ppellant from AFIS at the request of law enforcement, which was never introduced into evidence?

[III.] Whether the trial court abused its discretion in denying Appellant's request for a continuance of the trial in the case docketed at CP-46-CR-1675-2016, after earlier denying his request to change court appointed counsel, and granting him permission to proceed *pro se* because that decision effectively denied [A]ppellant of his constitutionally protected right guaranteed pursuant to the Sixth and Fourteenth Amendments of the United States and Pennsylvania Constitution to prepare a defense, prepare proper cross examination and importantly retain a defense fingerprint expert, when [A]ppellant was provided with the full discovery, including an expert report of fingerprint analysis on Wednesday, December 7, 2016, and the expert fingerprint report was modified and supplemented over that weekend, and then he was expected to start trial on Monday, December 12, 2016, without having the benefit of additional time to obtain a defense fingerprint expert and properly prepare his defense?

IV. Whether the trial court abused its discretion in CP-46-CR-1675-2016 by allowing the jury, over the objection of [A]ppellant, to have and review in deliberation, the fingerprint expert report because it greatly prejudiced [A]ppellant, in light of the jury's request at that time same time [sic] to not only have the report but also additional information not provided concerning the accuracy of AFIS database in its use for fingerprint identification,

the transcript of available information to explain whether there were new fingerprints taken from [A]ppellant after he was taken into custody, and if so, whether these compared to the AFIS system prints, and whether there a one-to-one match of the crime scene prints to the AFIS database, or some other critical filter used to match [A]ppellants' prints to the crime scene prints, and under circumstances where the critical piece of evidence in this case was fingerprint analysis?

Appellant's Brief at 6-8 (issues re-ordered to facilitate disposition) (suggested answers omitted).

### *Brady* Violation

Appellant first contends that "[t]he Commonwealth committed a *Brady* violation . . . by failing to provide a copy of the fingerprint obtained from AFIS that reportedly belonged to [A]ppellant[.]"  Appellant's Brief at 39.

"To establish a *Brady* violation, [A]ppellant must demonstrate that: (1) the prosecution concealed evidence; (2) the evidence was either exculpatory or impeachment evidence favorable to him; and (3) he was prejudiced." *Commonwealth v. Treiber*, 121 A.3d 435, 460–61 (Pa. 2015).

First, Appellant failed to demonstrate that "the prosecution concealed evidence." *See id.* at 460.  "The burden rests with the appellant to prove, by reference to the record, that evidence was withheld or suppressed by the prosecution."  *Commonwealth v. Roney*, 79 A.3d 595, 607 (Pa. 2013). Appellant presents no evidence and makes no reference to the record demonstrating that the Commonwealth actively concealed or suppressed the fingerprint.  *See* Appellant's Brief at 39-44.  He merely makes the bald,

unsupported claim that the fingerprint evidence from AFIS was "suppressed[.]" *Id.* at 43.

Second, Appellant failed to meet the requirement that the allegedly concealed evidence was exculpatory. *See Treiber*, 121 A.3d at 461. "Exculpatory evidence is that which extrinsically tends to establish defendant's innocence of the crimes charged." *Commonwealth v. Lambert*, 765 A.2d 306, 325 n.15 (Pa. Super. 2000). "*Brady* does not require the disclosure of information that is not exculpatory but might merely form the groundwork for possible arguments or defenses." *Roney*, 79 A.3d at 608 (citations and internal quotations omitted). Appellant has failed to articulate how or why he believes that the fingerprint obtained from AFIS would have exonerated him. *See* Appellant's Brief at 42-43. Assuming, for argument's sake, that additional information about the fingerprint could have laid the groundwork for possible arguments or defenses, *Brady* does not require the disclosure of such information. *Roney*, 79 A.3d at 608.

In addition, Appellant fails to demonstrate how he was prejudiced. *See Treiber*, 121 A.3d at 461. To establish prejudice, an appellant must demonstrate a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* Although Appellant discusses the "subjective" nature of fingerprint analysis, suggests that the fingerprints could have been used to impeach the Commonwealth's expert, and argues that "the Commonwealth failed to meet its burden of proof that his prints matched those from Circle K[,]" Appellant's

Brief at 43, he fails to establish that it was more likely than not that the result of the proceeding would have been different had he received the fingerprints. *See Treiber*, 121 A.3d at 461. Significantly, he provides no support for his suggestion that the fingerprints would have shown a result favorable to him. *See* Appellant's Brief at 43-44.

Hence, Appellant has not established any of the three required prongs to support a *Brady* claim. *See Treiber*, 121 A.3d at 460-61.

Moreover, "*Brady* evidence . . . cannot have been discoverable through the exercise of reasonable diligence." *Commonwealth v. Simpson*, 66 A.3d 253, 264 (Pa. 2013). As he admits, Appellant knew about the fingerprint evidence since the affidavit of probable cause to the complaint. Appellant's Brief at 41 (citing Trial Ct. Op., filed February 6, 2019, at 14-15). Accordingly, he could have requested a copy of the fingerprint at any time thereafter. Yet, he informed the trial court that discovery was complete prior to requesting or receiving the fingerprint. Trial Ct. Op., filed February 6, 2019, at 13. Ergo, Appellant has failed to establish that he could not have discovered the fingerprint from AFIS through the exercise of due diligence, and his *Brady* claim fails for this reason as well. *Simpson*, 66 A.3d at 264.[3]

_____

[3] As for Appellant's cursory mention that "[t]he Commonwealth committed a . . . violation [of] the Pennsylvania Rules of discovery by failing to provide a copy of the fingerprint[,]" Appellant's Brief at 39, his only further reference to any procedural rule is: "Pa.R.Crim.P. 573(B)(1), requires the Commonwealth to 'disclose to the defendant's attorney all of the requested items or information, provided they are material to the instant case' as part of

## Sufficiency of the Evidence

Next, Appellant challenges the sufficiency of the evidence. Appellant's Brief at 30-33.

This Court's standard for reviewing sufficiency of the evidence claims is as follows:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

---

mandatory discovery." Appellant's Brief at 39. However, Appellant has misquoted Pa.R.Crim.P. 573(B)(1), which actually states: "the Commonwealth shall disclose to the defendant's attorney all of **the following** requested items or information, provided they are material to the instant case." *Id.* (emphasis added). The Rule then enumerates seven categories of evidence to be disclosed. Pa.R.Crim.P. 573(B)(1)(a)-(g). Appellant has failed to articulate which category would apply, and we cannot speculate as to what his argument might be. *See* Appellant's Brief 39-44. Any claim relating to Pa.R.Crim.P. 573(B)(1) is thereby waived for lack of proper development. *See, e.g.*, *Commonwealth v. Spotz*, 18 A.3d 244, 281 n.21 (Pa. 2011) (matter waived for lack of development).

> ***Commonwealth v. Rodriguez***, 141 A.3d 523, 525 (Pa.Super.
> 2016) (quoting ***Commonwealth v. Tarrach***, 42 A.3d 342, 345
> (Pa.Super. 2012)).

***Commonwealth v. Izurieta***, 171 A.3d 803, 806 (Pa. Super. 2017) (internal brackets omitted).

Appellant contends that the evidence was insufficient to convict him of the aforementioned charges, because the jurors during his jury trial and the trial court during his bench trial misconstrued the content of the surveillance video, including whether it showed that the perpetrator was holding a firearm. Appellant's Brief at 30-32. In doing so, Appellant is requesting that we "re-weigh the evidence and substitute our judgment for that of the fact-finder[,]" which we cannot and will not do. ***Izurieta***, 171 A.3d at 806. "[A]ny doubts" regarding the content of the surveillance video were "to be resolved" by the "fact-finder" and not by this Court. ***Id.***

Similarly, Appellant asks us to re-interpret the jury's conclusion as to when the fingerprint may have been left on the counter in the Circle K convenience store, Appellant's Brief at 30, 32-33, which is again requesting that we "re-weigh the evidence and substitute our judgment for that of the fact-finder[,]" which we cannot and will not do. ***Izurieta***, 171 A.3d at 806.

### Continuance

Next, Appellant contends that the trial court abused its discretion in denying his request for a continuance after the trial court granted his motion to proceed *pro se*. Appellant's Brief at 33. A "trial court has broad discretion regarding whether a request for continuance should be granted, and we will

not disturb its decision absent an apparent abuse of that discretion." **In re K.J.**, 27 A.3d 236, 243 (Pa. Super. 2011) (citation and internal brackets omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Gail A. Weilheimer, we conclude Appellant's issue merits no relief. We agree with the trial court that "[t]he instant record reflects Appellant's understanding of his decision to proceed *pro se*, and that he voluntarily chose to do so, as he was given an extensive qualifying examination during which th[e trial c]ourt and counsel clearly explained the issues." Trial Ct. Op., filed February 6, 2019, at 11. Prior to trial, the trial court, discussed with Appellant that the case was scheduled for a jury trial on that day, competent counsel was available to represent him, he understood the charges against him, he was bound by the normal rules of court if he proceeded *pro se* even though he was an untrained layperson, his failure to preserve claims would result in their waiver, he was not on any medication and was thinking clearly when making this decision, he was not being forced or threatened to represent himself, and the trial court thought self-representation was "a very bad choice[.]" N.T., 12/12/2016, at 4-8. Despite all of this warning and the presence of standby counsel, Appellant still made the informed decision to proceed without counsel. **Id.**

Additionally, when the trial court made its decision to deny the continuance, it explained to Appellant that the trial had already been delayed about two months and had been listed five different times before that for

- 13 -

pretrial hearings. *Id.* at 10. Also, by that time, ten months had passed since Appellant's arrest, and the trial court had granted four prior continuances at Appellant's request. Trial Ct. Op., filed February 6, 2019, at 13; Call of the Trial List Order, 10/19/2016.

Furthermore, Appellant, through counsel, had informed the trial court that discovery was complete two months earlier. *Id.* In addition, Appellant had already received photographs and fingerprint evidence as part of discovery. *Id.* at 14. As for Appellant's contention that he did not receive "an expert report of fingerprint analysis" until five days before trial, Appellant's Brief 34, there is nothing in the record to support this claim. During a pretrial conference on December 7, 2016, Appellant received the fingerprint expert's curriculum vitae and some slides that the expert planned to use during his testimony; the Commonwealth "in [an] abundance of caution" provided Appellant with an additional copy of the expert report, even though the Commonwealth "believe[d]" that Appellant had already received it. N.T., 12/7/2016, at 13-14. After receiving these material from the Commonwealth, Appellant gave no indication that he had not seen the actual expert report before. *See id.* For all these reasons, it is unclear how Appellant could have "better prepare[d] a defense" if he had been granted additional time. N.T., 12/12/2016, at 8.

Therefore, we conclude that the trial court did not abuse its discretion when it denied Appellant's request for a continuance, and, consequently, we will not disturb its decision. *K.J.*, 27 A.3d at 243.

**Materials Permitted in Possession of the Jury**

Finally, Appellant contends that the fingerprint expert's report should not have been sent to the jury room during deliberations. Appellant's Brief at 44-48.

"Whether an exhibit should be allowed to go out with the jury during its deliberation is within the sound discretion of the trial judge." ***Commonwealth v. Barnett***, 50 A.3d 176, 194 (Pa. Super. 2012).

Pa.R.Crim.P. 646 states, in relevant part:

(A) Upon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (C). . . .

(C) During deliberations, the jury shall not be permitted to have:

(1) a transcript of any trial testimony;

(2) a copy of any written or otherwise recorded confession by the defendant;

(3) a copy of the information or indictment; and

(4) except as provided in paragraph (B), written jury instructions.

As Pa.R.Crim.P. 646(C) does not explicitly prohibit the jury from having expert reports during deliberations, the trial court did not abuse its discretion in allowing them to do so. ***Barnett***, 50 A.3d at 194.

\* \* \*

Based on the foregoing, Appellant is not entitled to relief on any of his claims. Thus, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/19/19</u>